UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number:  88-1886-CIV-MORENO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

SOUTH FLORIDA WATER MANAGEMENT
DISTRICT, *et al.*,

      Defendants.

_____/

## ORDER ADOPTING THE AUGUST 30, 2010 REPORT OF THE SPECIAL MASTER AND GRANTING THE RULE 60(b)(5) MOTION

The August 30, 2010 Report of the Special Master is unwavering and emphatic in the recommendation that the EAA A-1 Reservoir is no longer in the best interests of the Everglades. The Special Master, along with all the parties to this litigation, with the sole exception of the Miccosukee Tribe of Indians of Florida, argue that the Court should relieve the State Parties of the obligation to construct the EAA A-1 Reservoir. The Tribe's strongest argument in opposition to the State Parties' Rule 60(b)(5) motion is that the State Parties do not have a suitable alternative remedy to the deepwater reservoir. Rather than completion of the EAA A-1 Reservoir, Special Master John Barkett recommends an expanded STA or a shallow water reservoir as better suited to meet the requirements of the Consent Decree and the Clean Water Act as set forth in Judge Alan Gold's April 14, 2010 Order, *Miccosukee Tribe of Indians of Fla. v. United States*, 706 F. Supp. 2d 1296 (S.D. Fla. 2010).  After reviewing the record before the Special Master, this Court agrees that there are changed circumstances and the EAA A-1 Reservoir would not materially benefit the Loxahatchee

Refuge. Accordingly, the Court grants the Rule 60(b)(5) Motion and relieves the State Parties from the obligation to construct the EAA A-1 Reservoir and the related canal projects.

The Court does not find the Special Master went beyond the scope of this Court's March 31, 2010 Order by recommending the EAA A-1 Reservoir Project be abandoned. Indeed, the Court's March 31, 2010 Order gave the Special Master the discretion to reconsider the remedial scheme he recommended in his 2006 Report. Recognizing that science and technology have moved quickly, the Court fully expected the Special Master to re-evaluate the viability of the EAA A-1 Reservoir. That he did and concluded it was no longer in the best interests of Everglades restoration. Accordingly, it is

ADJUDGED that the Court adopts the August 30, 2010 Report of the Special Master (D.E. No. 2200). It is also

ADJUDGED that the State Parties' Motion to Adopt the Report of the Special Master (D.E. No. 2206) filed on **September 17, 2010** is GRANTED and the United States' Motion to Adopt in part the Report of the Special Master (D.E. No. 2207) filed on **September 17, 2010** is GRANTED in part.[1]

---

[1] The United States objects to certain references in the Special Master's Report: (1) the reference to 10 ppb, without specifying the level of concentration; (2) the reference that the Consent Decree is based on state law; and (3) the Special Master's characterization of the State Parties' motion as one to modify prior remedial commitments embodied in the Court's March 31, 2010 order. The Court reserves ruling on the first issue as it is intertwined with the United States' Motion for Resolution of Liability Issues. Although the Consent Decree is a settlement of a federal case, the Court agrees with the State Parties that the Consent Decree does have a basis in state law and is grounded in the enforcement of state law. *See Miccosukee Tribe of Indians of Florida v. United States*, 706 F. Supp. 2d 1296, 1314 (S.D. Fla. 2010) (recognizing the Consent Decree is grounded on state law). As to the third issue, the Court construes the State Parties' Motion as one under Rule 60(b)(5) – quite simply, that is the Federal Rule under which the State Parties are seeking relief.

The Court also notes that the environmental groups took limited exceptions to certain statements

## I. BACKGROUND

*A. Summary of the Special Master's Recommendations in the August 30, 2010 Report*

In his Report, the Special Master provides the Court with a history of the EAA A-1 Reservoir to explain why he is now recommending that the State Parties be relieved of their obligation to construct it. The Reservoir was intended to benefit the Loxahatchee Refuge by diverting water to relieve stress on STA-1W, which otherwise might be overloaded by phosphorus-laden water from the S-5A basin. After hearing evidence, the Special Master concluded that the EAA Feasibility Study that he considered in 2005 proved inaccurate over the last five years. The EAA Feasibility Study provided the initial impetus for the EAA A-1 Reservoir. Because the model turned out to be inaccurate, the underlying basis supporting the A-1 Reservoir no longer is present. In the Special Master's view, the EAA Feasibility Study was a modeling effort that contained a large number of assumptions that were not necessarily reliable. In hindsight, the Special Master says the United States and the Miccosukee Tribe of Indians were correct in 2005-2006 when they questioned the validity of the study.

Addressing the Court's concern that work that has already been completed on the Reservoir

---

contained in the Special Master's Report (D.E. No. 2210) filed on September 17, 2010. The phrases at issue do not affect the overall discussion of the Special Master's Report. The environmental groups request the Court excise references in the Special Master's Report that might implicate the relationship between the A-1 Reservoir and the Comprehensive Everglades Restoration Plan implementation processes set forth in the Water Resources Development Act of 2000. That relationship was briefed before Judge Middlebrooks. *Nat'l. Resources Defense Council v. Van Antwerp*, Case No. 07-80444-CIV-MIDDLEBROOKS. Because the Court is not compelling construction of the reservoir, it is likely that this issue is moot. Nevertheless, in an abundance of caution and because the phrases at issue do not implicate the end result here, the Court will excise the phrases on pages 14 and 74 of the Special Master's Report relating to the relationship between the A-1 Reservoir and CERP. The Court will also add a footnote on page 16 of the Report indicating that the A-1 Reservoir permit was the subject of a legal challenge and remains unresolved.

was in vain, the Special Master opines that the work can contribute to a more beneficial shallow water reservoir. He opines emphatically that the deepwater reservoir, which is what the EAA A-1 Reservoir would be, would not materially benefit the Loxahatchee Refuge. The work that was done also triggered litigation. The District originally planned to start construction of the A-1 Reservoir when the Army Corps of Engineers completed its planning process for the larger CERP Reservoir. The permit for the EAA A-1 Reservoir was issued on July 11, 2006. It expires this summer on July 11, 2011. Litigation over the validity of the permit ensued before Judge Middlebrooks. When work on the Reservoir stopped in November 2008, Judge Middlebrooks dismissed the suit without prejudice as there was no longer a case or controversy before him.

The inconsistency of positions with respect to the EAA A-1 Reservoir is also documented in the Special Master's Report. In 2006, the EAA A-1 Reservoir was only a limited part of the solution. By February 1, 2008, the State Parties were telling Judge Middlebrooks in the permit litigation that the A-1 Reservoir was significantly in the public interest. By the fall of 2008, the South Florida Water Management District's Governing Board was considering other uses for the Compartment A-1 land. Now, the District's experts all opine the A-1 Reservoir should never be built and the land should be used for an STA. Likewise, as noted above, the Tribe has been inconsistent in its positions. The Tribe was highly critical in 2006 of the EAA Feasibility Study, which was the impetus for the Reservoir. In 2006, the Tribe preferred expansion of the STA 1-W over the diversion of water, which was the intent of the Reservoir. Today, the Tribe supports construction of the EAA A-1 Reservoir as a deepwater reservoir.

Expressing disappointment over the role of the Technical Oversight Committee throughout the course of these proceedings, the Special Master comments that there is not a panel of scientists

-4-

working together as envisioned by the Consent Decree. Tools designed to promote scientific consensus and minimize judicial involvement are unused, underutilized, or undeveloped. It is with this background that the Special Master re-evaluates the effectiveness of a deepwater reservoir at the Compartment A-1 location, and in light of this Court's March 31, 2010 Order.

### 1. Evidence of Changed Circumstances

#### a. Litigation before Judge Alan Gold

The Special Master opines that the Clean Water Act litigation before Judge Gold is a change in circumstance that should be considered in deciding the State Parties' Rule 60(b)(5) motion. In *Miccosukee Tribe of Indians of Florida v. United States of America*, 706 F. Supp. 2d 1296 (S.D. Fla. April 14, 2010), Judge Gold ordered the United States Environmental Protection Agency to require the State of Florida to have waters entering the Everglades satisfy the phosphorus numeric criterion of 10 ppb. The United States presented testimony before the Special Master that the EPA is looking to use the Compartment A-1, the location of the Reservoir, as part of its proposed structure to meet Judge Gold's order. Gail Mitchell, the EPA's Deputy Director of the Water Protection Division, testified that the Compartment A-1 lands (the Reservoir lands) are situated in the STA 3/4 flow path so that it may be highly beneficial to be able to use those existing Florida State lands, in whole, or in part, as a location for STAs to improve water quality. At the July evidentiary hearing, Ms. Mitchell did concede during the Tribe's cross-examination of her that the EPA could comply with Judge Gold's Order and this Court's order compelling construction of the reservoir. (Evid. Hr'g. Tr. Vol. II at 310) ("So it's possible for the EPA to issue an amended determination that complies with Judge Gold's order and doesn't purport to overturn Judge Moreno's order? A. Absolutely."). That being said, it was clear from Ms. Mitchell's testimony, which was consistent with the expert report

she submitted, that "the EAA A-1 Reservoir lands are situated within the STA-3/4 flow path so that it can be highly beneficial to be able to use those existing State lands either in whole or in part as a location of STAs to improve water quality." (Evid. Hr'g Tr. Vol. II at 311.)

After considering this testimony, the Special Master concurred with the State Parties that the practical effect is that Judge Gold's Order and this Court's Order compelling construction of the EAA A-1 Reservoir cannot work well together.

### b. Financial Changes and the Land Acquisition

It is no secret that plunging revenues now limit the State Parties' remedial choices. The estimates show that the EAA A-1 Reservoir and the related canal projects will cost $724-815 million. The Special Master finds the decreased revenues to constitute a change in circumstance that affects the viability of this project. Affordability, however, is not the driving force behind the Special Master's Recommendation. Rather, the Special Master opines that science does not support construction of the EAA A-1 Reservoir.

The State of Florida's land acquisition, although not as originally envisioned by then-Governor Charlie Crist, has also changed the landscape for Everglades restoration. A number of scientists, albeit not the Tribe's, have been studying varying configurations of water treatment, water storage, and canal conveyance in light of the U.S. Sugar land acquisition. They uniformly have identified Compartment A-1 for usage other than as a deep water reservoir. Respected Everglades scientists, Drs. Fenneman, Harwell, Naja, Redfield, Van Lent and Wise offered opinions that a deep water reservoir is under the circumstances not the smartest best use of Compartment A-1 to assist the Loxahatchee Refuge or to treat water for Everglades restoration.

The Special Master did not find the testimony of Dr. Jones and Col. Rice, employed by the

Tribe, persuasive. Specifically, their testimony failed to account for the long length of time it would take to actually construct the A-1 Reservoir or ECART, a project that is a necessary component of the A-1 Reservoir.

### B. Summary of the Parties' Positions Regarding the Special Master's Report

The United States, the State Parties, and the environmental groups all agree with the Special Master's Report – that the EAA A-1 Reservoir is no longer in the best interests of the Everglades. The Tribe is the sole party to object to that recommendation. The Environmental Groups that have participated in this litigation support the Special Master's Report. The following more specifically establishes the parties' positions.

### 1. United States of America

The United States agrees with the majority of the Special Master's Report, and in particular with the recommendation that the Court relieve the State Parties of the obligation to construct the EAA A-1 Reservoir. The United States only takes issue with certain statements of the Master's report that amount to dicta.

The United States agrees that Judge Gold's Order in *Miccosukee Tribe of Indians of Florida v. United States*, 706 F. Supp. 2d 1296 (S.D. Fla. 2010) constitutes "changed circumstances" justifying relief under Fed. R. Civ. P. 60(b). The United States also agrees the EAA Feasibility Report has become obsolete and that ecological and economic factors weigh in favor of granting the State Parties' Rule 60(b) motion. The United States argues the evidence adduced at the July 2010 hearing establishes that the Reservoir would do almost nothing to improve water quality in the Refuge.

### 2. The State Parties

Of course, the State Parties agree wholeheartedly with the Special Master and have filed a Motion to Adopt the August 30, 2010 Report in its entirety. The State Parties urge the Court to consider the "changed circumstances" as a whole.

The State Parties view the Tribe's argument as one of affordability. Because the State Parties can afford to build the Reservoir, they should irrespective of whether a deepwater reservoir at Compartment A-1 is still in the best interests of Everglades Restoration. The State Parties convincingly argue they should not be hamstrung to spend available dollars on a project that will not materially assist the Refuge especially when there are strong scientific arguments and changed circumstances that the Reservoir is not in the best interests of Everglades Restoration.

### 3. The Miccosukee Tribe of Indians of Florida

The Tribe disagrees with the Report of the Special Master and argues the EAA A-1 Reservoir is a critical component to Everglades restoration. In the Tribe's view, the Reservoir Project will optimize the performance of the STAs and improve water quality by diverting water away from the overloaded STAs. It is true that water storage is a necessary component of restoration and the Tribe emphasizes in its objections that the evidence at the hearing through its experts Col. Rice and Dr. Jones established that the Reservoir would accomplish this goal. The Special Master did not find that evidence persuasive. The thrust of the Tribe's argument is that there are no "changed circumstances" to justify abandonment of the Reservoir and the State Parties have not met their burden to establish "changed circumstances."

Finally, the Tribe argues the Special Master fails to provide a "suitably tailored" alternative for replacing the Reservoir Project. In the Tribe's view, even if there are changed circumstances in favor of permitting the State Parties to abandon the Reservoir Project, the Special Master fails to

recommend a suitably tailored alternative for abandoning the Reservoir. Without any alternative in place, the Tribe urges the Court that it not allow the State Parties to abandon the Reservoir Project.

## II. LEGAL ANALYSIS

*A. Legal Standard*

The parties dispute whether the higher standard set forth in *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 383 (1992) and *Horne v. Flores*, ___ U.S. ___, 129 S. Ct. 2579, 2593 (2009). The Audubon Society makes a persuasive argument that the Court need simply reconsider its March 31, 2010 Order compelling the construction of the EAA A-1 because that order did not constitute a modification of the Consent Decree. Nevertheless, the Court finds the higher standard of Rule 60(b) is satisfied.

Relief under Rule 60(b) is an "'extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.'" *Enax v. Goldsmith*, 322 Fed. Appx. 833, 835 (11th Cir. 2009) (quoting *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001)). "Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms of a consent decree." *Rufo*, 502 U.S. at 383. Rule 60(b)(5) provides "a means by which a party can ask a court to modify or vacate a judgment if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne*, 129 S. Ct. at 2593 (quoting *Rufo*, 502 U.S. at 384).

The party seeking Rule 60(b)(5) relief bears the burden to show that a significant change exists to grant such extraordinary relief. *Horne*, 129 S. Ct. at 2593 ("The party seeking relief bears the burden of establishing that changed circumstances warrant relief."). "A party seeking

modification of a consent decree may meet its initial burden by showing either a significant change either in factual conditions or in law." *Rufo,* 502 U.S. at 384.

> ### 1. Did the State Parties meet their burden to show changed circumstances to warrant relief under Rule 60(b)(5)?

In the Court's view, the State Parties have met their burden[2] to establish changed circumstances warranting relief. Evolving scientific evidence led almost every expert to agree that the EAA A-1 Reservoir is not the best course of action to achieve restoration. The land acquisition provides alternative ways to reduce nutrient pollution and the experts, by and large, agree that the location of the EAA A-1 Reservoir is better-suited for an expanded STA use. In addition, the scientific evidence showed the Reservoir would not aid in reducing phosphorus to the level required by the Clean Water Act as set forth in Judge Gold's April 14, 2010 Order. The reduction of revenue from 2006 until the present is another changed circumstance that requires the Court to re-evaluate the remedial scheme. It seems that given these changed circumstances, now is the time to move forward with exploring better viable alternatives rather than cling to what was promised in the past.

The Court recognizes that it is taking a step back from its prior March 31, 2010 order, but indeed, the Court at the time, invited the parties to brief the changes that have occurred so the Court could more accurately determine whether the EAA A-1 Reservoir the Tribe was seeking was still in the best interests of the Everglades. At this time, the Court finds the overwhelming scientific evidence persuasive that it is not. The *Rufo* and *Horne* standards are met as there have been many significant changes over the past five years that affect the EAA A-1 Reservoir's effectiveness and

---

[2]The Tribe argues the Special Master inappropriately transferred the burden to it to establish there have not been changed circumstances. Not so. The transcript of the evidentiary hearing establishes there was testimony.

the Court need not explore the less stringent standard set forth by Judge Hoeveler in this case when he reviewed a modification to the Consent Decree.[3] (Omnibus Order, D.E. No. 1623) (April, 27, 2001 at 17-18.)

### 2. Is there a suitably tailored remedy?

The second prong of *Rufo* is that "[o]nce a moving party has met its burden of establishing either a change in fact or in law warranting modification of a consent decree, the district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 391.

In this case, the Consent Decree is a "rare avis." (Omnibus Order, D.E. No. 1623) (April, 27, 2001 at 11.) "Federalism concerns are heightened when, as in this case, a federal court decree has the effect of dictating state and local budget priorities." *Horne*, 129 S. Ct. at 2593. In this context, the Court must ask whether in light of the changed circumstances, the Special Master is recommending a better smarter way to approach Everglades Restoration. The Special Master will be addressing this in a further report to the Court on remedies. As of August 30, 2010, the Special Master recommended an expanded STA at this location, which is in the STA 3/4 flow path, to improve water quality and assist compliance with Judge Gold's order regarding the Clean Water Act. The Court agrees that the overwhelming evidence shows that a deepwater reservoir, the EAA A-1

---

[3]Judge Hoeveler set forth a standard for modification of the Consent Decree when there was agreement on change, or an objector did not have a protected interest. The standard he invoked was an equitable one, determining whether the proposed change was fair and in the public interest, and not the product of collusion. As the parties' here are in disagreement as to whether the State Parties should construct the EAA A-1 Reservoir, the Court will not employ the standard set forth by Judge Hoeveler. Nevertheless, because the more stringent standard of *Rufo* and *Horne* is met, the Court agrees with the Special Master that the issue need not be analyzed in light of this standard.

Reservoir, is no longer in the best interests of Everglades restoration and a shallow water reservoir or an expanded STA is advisable.

DONE AND ORDERED in Chambers at Miami, Florida, this 2⁄ day of March, 2011.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-12-