UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 88-1886-CIV-MORENO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SOUTH FLORIDA WATER MANAGEMENT
DISTRICT *et al.*,

    Defendants
_____/

### REPORT OF THE SPECIAL MASTER (MARCH 29, 2013) SUPPLMENTING THE SPECIAL MASTER'S MARCH 1, 2012 REPORT

In the Court's "Order Granting Motion to Adopt the Special Master's Report, Motion Seeking Declaration of Violations, and Motion for Declaration of Breach of Commitments" dated March 31, 2010 ("March 31 Order") [DE 2134], the Court instructed me to recommend "realistic mutually-agreeable deadlines" for the completion of projects listed on Appendix A to the Report of the Special Master (July 5, 2006) [DE 1976]. March 31 Order, p. 16. At the time, there were two Appendix A projects not yet completed: stormwater treatment areas (STA) referred to as "Compartments B and C."[1] Based on information available as of March 1, 2012, I established realistic deadlines for operation of both projects in my Report and Recommendation to the Court as of that date.

---

[1] Compartment B consists of a north and south "build out" of STA-2. A depiction of these STA build outs appears in the Report of the Special Master (July 5, 2006), p. 65 and also at http://my.sfwmd.gov/portal/page/portal/xrepository/sfwmd_repository_pdf/mitnik_final_toc_feb_2012.pdf. Compartment C represents an expansion of STA-6. *Id.*, p. 67. See http://my.sfwmd.gov/portal/page/portal/xrepository/sfwmd_repository_pdf/mitnik_final_toc_feb_2012.pdf. Appendix A to my July 5, 2006 Report is a schedule produced by the South Florida Water Management District that predicted that the permitting and construction of Compartments B and C would be completed by the middle of 2010.

1

At the request of the parties, the Court held this matter in abeyance for a considerable period of time to allow the parties to engage in settlement discussions on the Maximum Annual Discharge Limit (MADL) that was one of the subjects of my January 4, 2011 Report and Recommendation approved by the Court by Order dated September 30, 2011 [DE 2291]. As a result of the "settlement discussion" stay allowed by the Court, the Court did not rule on my March 1, 2012 Report and Recommendation.

The parties' settlement discussions were lengthy but successful and they agreed on the MADL, among other aspects of their agreement.

Upon motion of the State Parties, the Court then held a hearing on March 25, 2013 to hear argument on all pending issues. As a result of discussions at that hearing, the Court directed me to supplement my March 1, 2012 report with updated information on the current operational status of Compartments B and C. Based on updated information provided to me by the South Florida Water Management District (District) in emails dated November 2, 2012 and March 25, 2013, I provide the following supplement to my March 1, 2012 Report.[2]

---

[2] The last remaining issue in the Court's March 31, 2010 Order—remedies for the violation of the Long Term level in the Loxahatchee Wildlife Refuge (Refuge)—was the subject of extensive hearings in 2011. Because of the settlement discussions of the parties, I deferred preparation of a Report and Recommendation on remedies. The parties have now agreed on a number of projects that the District is or will be undertaking. That agreement was made to resolve issues associated with the Clean Water Act litigation presided over by Judge Gold and discussed at length in my March 1, 2012 Report. The parties, however, could not reach an accord on whether their agreements with respect to the Clean Water Act litigation represented a final resolution of the Consent Decree violation, and, in particular, whether this Court need take any further action by way or order or otherwise with respect to the violation. Whether the Court still wants the Special Master to prepare a Report and Recommendation thus remains an open issue. Based on the views expressed by the Court at its March 25, 2013 hearing, the Special Master will await further direction from the Court on whether the Court wishes to receive the Special Master's views on the need for the Court to do anything further in response to the violation of the Long Term level that prompted the referral in the Court's March 31, 2010 Order. Should the Court seek those views and to ensure that the Court is fully informed before providing them, the Special Master would want the time to first hear more details from the parties on the certainty of the funding for, and the current planned scope of and timing for completion of, the agreed-upon projects that relate to protection of the Refuge.

**Permitting**

As discussed at length in the March 1, 2012 Report, permitting presented a major obstacle to establishing a realistic deadlines for operation of Compartments B and C. Since the March 1, 2012 Report was issued, the United States and the State of Florida have resolved permit-related issues. Thus permitting is no longer an obstacle to operation of Compartments B and C.

**Compartment B**

Since my March 1, 2012 Report, the North Buildout of Compartment B (also referred to as STA-2, Cells 4, 5 and 6) now has been vegetated. Pumps are in place. What are called "net improvement" tests have been satisfied. Thus, this part of Compartment B is fully operational. Hence, setting a deadline for completion of the North Buildout of Compartment B is now moot. This particular STA is ready to treat and discharge stormwater when there is stormwater available to treat.

The South Buildout of Compartment B (also referred to as STA-2, Cells 7 and 8) still requires vegetation growth and demonstration of a net improvement in treating phosphorus before it will become fully operational. The District currently anticipates that with the onset of the wet season in the next few months, Cells 7 and 8 of STA-2 will be fully vegetated and will pass required tests to demonstrate that there will be a net improvement in water quality relating to phosphorus. At that point, the South Buildout of Compartment B will be fully operational.

---

The Special Master would also like to receive information generally on the scientific research that is to accompany this work since that research may affect the timing, scope, and cost of the projects designed to achieve the MADL for the Refuge. Finally, the Special Master would want to have the parties explain the enforcement process that now is in place at the State level so that the Court can account for that enforcement mechanism in considering how the Court might wish to proceed.

Should the Court wish to set a formal deadline for the operation of this part of Compartment B, the Special Master recommends that it be set at October 1, 2013.

**Compartment C**

Compartment C has three flow ways, the northern, southern, and the central, that became flow capable in December 2010. The northern and southern flow ways of Compartment C (STA-5/6, Cells 5-4A and 5-4B, and 6-4 and 6-2) are in the same position as the North Buildout of Compartment B. They are fully operational. When the wet season begins to generate stormwater requiring treatment, these two flow ways will be ready to receive, treat, and discharge the stormwater. Hence, the need to set a deadline for these two flow ways is also moot.

The central flow way of Compartment C is in the same position as the South Buildout of Compartment B. It is expected to become sufficiently vegetated, pass net improvement tests, and become fully operational during the 2013 wet season.

**Recommendation**

There is no question that Compartments B and C in large part are operational and in full will soon completely be fully operational. Based on the updated information provided to me by the parties, in response to the question posed in the referral to the Special Master, it is my recommendation that

1. The Court need not set a deadline for a realistic date by which the District must be treating water in the North Buildout of Compartment B or the northern and southern flow ways of Compartment C since these STAs are operational and merely now await sufficient water to either begin or continue treatment. This part of the referral is now moot.

2. As for the South Buildout of Compartment B and the central flow way of Compartment C, the Special Master recommends that the Court set a deadline of October 1, 2013 for operation of these two STAs. Given the vagaries of Everglades

4

restoration, the Special Master adds this caveat: if conditions beyond the control of the District prevent operation by this date, the District should notify the Special Master to obtain an extension of this date.

DATED: March 29, 2013.

        Respectfully Submitted,

        /s/ John M. Barkett____
        John M. Barkett, Esq.
        Special Master

691851 v1